**Melvin WADE, Plaintiff–Appellant,**

**v.**

**Oscar BYLES and T Force Security, Inc., Defendants–Appellees.**

No. 95–2322.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1995.

Decided May 13, 1996.

---

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Melvin Wade filed suit under 42 U.S.C. § 1983 against defendants Oscar Byles, a private security guard, and his employer, T Force Security, Inc. ("T Force"), alleging that Byles used excessive force on Wade in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The defendants moved for summary judgment, asserting that they were not state actors within the meaning of § 1983. The district court granted the motion for summary judgment and dismissed the § 1983 claim along with the plaintiff's pendent state law claims. On plaintiff's appeal, we affirm the decision of the district court.

## I.

On August 10, 1992, Wade entered the lobby of a residential building owned by the Chicago Housing Authority ("CHA"). When Wade and a group of friends attempted to pass through a security checkpoint, an altercation developed between him and Byles, who was the lobby security guard. Although Wade and Byles have very different accounts of how the incident unfolded, they do not dispute its end result—Byles shot Wade in the groin. At the time of the shooting, Byles was employed by T Force, which was under contract with the CHA to provide security services for various CHA properties, including the one where Wade was shot. Byles was never an employee of CHA, nor did he receive directions from CHA regarding his actions during the incident.

CHA is an Illinois governmental entity that provides security services for residents of its housing projects. Pursuant to Illinois statute, CHA maintains a police force with jurisdiction limited to CHA property. Members of this police force, when within their jurisdiction, are statutorily vested with all the powers of city and state police. In addition to the police force, CHA employs its own in-house armed security guards.[1] At the

Kevin B. Rogers (argued), Chicago, IL, for Melvin Wade.

James Bartlett, Donald E. Stellato, Theodore C. Hadley, Esther J. Schwartz (argued), Stellato & Schwartz, Chicago, IL, for Oscar L. Byles.

James Scott McMahon, Donald E. Stellato, Esther J. Schwartz, Stellato & Schwartz, Chicago, IL, for T–Force Sec. Co., Inc.

---

1. The same statute that grants CHA the authority to establish a police force also provides that

"[t]he establishment of such a police force shall not affect the power of [CHA] to use or employ

time of the shooting incident, CHA also contracted with private security companies, such as T Force, to provide security in the lobbies of CHA buildings.[2] The T Force guards wore uniforms with patches identifying their employer. The guards were armed with handguns and were authorized by T Force to use deadly force only in self-defense. The primary responsibility of T Force guards was to control access to CHA buildings by monitoring the identification of people entering and leaving the buildings.[3] Guests who did not show proper identification or sign in were not allowed to enter the buildings, and T Force guards would ask such people to leave. If a person refused to leave, the guards would call the police, and either wait for the police to remove the person or arrest the person for criminal trespass pending the arrival of the police. Other guard duties included aiding people in the lobby, signing criminal complaints, and appearing in court when needed.

When on duty, T Force guards were responsible only for maintaining security within the immediate lobby areas of CHA buildings. According to T Force policy, guards were not allowed to pursue individuals outside the lobby. Rather, guards were obligated to remain in the lobby area until properly relieved. Moreover, private security guards did not participate in "sweep" searches of CHA residential units conducted by the CHA police department. *See generally Pratt v. Chicago Housing Auth.*, 848 F.Supp. 792 (N.D.Ill. 1994) (discussing constitutionality of warrantless "sweep" searches by CHA police). The powers of T Force guards were therefore local in nature and limited in scope.

## II.

We review the district court's grant of summary judgment *de novo* and draw all reasonable inferences in favor of Wade, the non-moving party. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995). Summary judgment should be entered only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the party opposing a motion for summary judgment bears the burden of proof on a particular issue, he may not rely on the pleadings, but must affirmatively demonstrate a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Moreover, this "genuine issue" of material fact must be more than "some metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The sole issue on this appeal is whether the district court erred in concluding that Byles, a private citizen employed by a private company to provide security at CHA buildings, was not a state actor when he shot Wade.[4] It is well established that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948)). Yet the question of "whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of no easy answer." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349–50, 95 S.Ct. 449, 453, 42 L.Ed.2d 477

---

other security personnel as permitted by law." 310 ILCS § 1/8.1a.

2. Although the contract between T Force and CHA leaves open the possibility that T Force would supply mobile patrols, T Force's services at the time of the incident were limited to providing lobby security.

3. This was also the primary responsibility of CHA's in-house security guards.

4. A showing of state action is necessary to establish Wade's excessive force claim based on the Fourth Amendment, which applies to the states via the Fourteenth Amendment. *See e.g., Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 452–53, 42 L.Ed.2d 477 (1974). Conduct that constitutes state action under the Fourteenth Amendment necessarily satisfies § 1983's under color of state law requirement. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982). Therefore, we need only examine whether Byles' conduct was state action within the meaning of the Fourteenth Amendment.

(1974). In general terms, before a private party's conduct can be considered state action, there must be a sufficiently close nexus between the state and the private conduct so that the action "may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786 (quoting *Jackson*, 419 U.S. at 351, 95 S.Ct. at 453–54). Thus, the state must somehow be responsible for the allegedly unlawful actions taken by the private party. *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786.

■ The Supreme Court has taken a flexible approach to determining when a state is responsible for the acts of private persons, adopting a variety of "tests" dependent on the particular facts of each case. The factual circumstances supporting a finding of state action, however, can generally be categorized into two broad groups. The first group includes situations where a state effectively directs, controls, or encourages the actions of a private party. In these cases, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.; see, e.g., Hinman v. Lincoln Towing Serv.*, 771 F.2d 189, 192–93 (7th Cir.1985); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 166, 98 S.Ct. 1729, 1738–39, 56 L.Ed.2d 185 (1978); *Jackson*, 419 U.S. at 357, 95 S.Ct. at 456–57. Wade does not attempt to rely on this test of state action. Indeed, he presents no evidence that CHA compelled or encouraged Byles to shoot him. Instead, Wade predicates his claim of state action on the second general scenario, in which a state delegates a "public function" to a private entity. *See, e.g., Blum*, 457 U.S. at 1005, 102 S.Ct. at 2786; *Jackson*, 419 U.S. at 352–53, 95 S.Ct. at 454–55; *Spencer v. Lee*, 864 F.2d 1376, 1379 (7th Cir.1989) (en banc), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).

■ The simple fact that a private entity performs a function that serves the public does not transform its conduct into state action. *Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982). A private entity may be deemed a state actor, however, if it performs functions that are "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353, 95 S.Ct. at 455. Such functions are so closely associated with government that a state cannot limit its accountability for their performance, even if they are carried out by private parties. Thus, although a state remains free to delegate the performance of these functions to private entities, the private entities are treated as arms of the state for purposes of § 1983 and the Fourteenth Amendment. The Supreme Court has found a few functions to fit within this category of state action. *See, e.g., Terry v. Adams*, 345 U.S. 461, 468–70, 73 S.Ct. 809, 813–14, 97 L.Ed. 1152 (1953) (election of public officials); *Marsh v. Alabama*, 326 U.S. 501, 505–09, 66 S.Ct. 276, 278–80, 90 L.Ed. 265 (1946) (operation of company town). Yet the Court has also declined to find an exclusive state function in a number of cases. *See, e.g., Blum*, 457 U.S. at 1011–12, 102 S.Ct. at 2789–90 (operation of nursing home); *Rendell–Baker*, 457 U.S. at 842, 102 S.Ct. at 2772 (education of children); *Flagg Bros.*, 436 U.S. at 161–6, 98 S.Ct. at 1736–37 (enforcement of statutory lien). It is with this precedent in mind that we resolve the current dispute.

■ Wade likens Byles to a private policeman, arguing that Byles' duties as a security guard were basically an extension of Illinois' "police powers." Wade then maintains that because police powers are traditionally exclusively reserved to the states, Byles was a state actor when he shot Wade. Defendants, in contrast, characterize Byles as nothing more than a "glorified doorman." There is no need for us to adopt either plaintiff's or defendants' characterizations, however, for the record makes clear the functions that Byles performed as a lobby security guard. We are not faced with a situation where a state has delegated its entire police power to a private police force.[5] Indeed, general po-

---

5. We note that the Supreme Court has explicitly left open the question of whether, and in what context, "private police forces" may be considered state actors. *Flagg Bros.*, 436 U.S. at 163–64, 98 S.Ct. at 1737. This court has held, however, that private railroad police possessing the

lice protection on CHA property is provided by the CHA police force, which is statutorily entrusted with "all powers possessed by the police of cities, and sheriffs. . . ." 310 ILCS § 10/8.1a. The contract security guards are not a part of this public police force, nor do they participate in searches of residential units conducted by the police. Furthermore, the area of responsibility of the contract guards in this case are clearly limited to the lobbies of CHA buildings.

The duties of a private security guard at a CHA building, however, include more than simply opening doors. Plaintiff correctly asserts that Byles was employed to provide security for CHA residents and was thereby authorized to carry a handgun, arrest people for criminal trespass pending arrival of the police, and use deadly force in self-defense. Although all of these powers have been traditionally exercised by the sovereign via the police, none has been *exclusively* reserved to the police. *See, e.g.,* 725 ILCS 5/107–3 (providing for citizens' arrests); *Spencer,* 864 F.2d at 1380 (noting that powers of arrest and self-defense are not exclusively governmental functions); *Carey v. Continental Airlines, Inc.,* 823 F.2d 1402, 1404 (10th Cir. 1987) (holding citizen's arrest does not constitute state action); *White v. Scrivner Corp.,* 594 F.2d 140, 142–43 (5th Cir.1979) (holding that detaining suspected shoplifter is not an exclusive state function). In fact, as Wade's counsel conceded at oral argument, Byles possessed powers no greater than those of armed security guards who are commonly employed by private companies to protect private property. We therefore find that Byles' function as a lobby security guard with the aforementioned limited powers is

not traditionally the exclusive prerogative of the state. The fact that Byles performed his duties on public property, or for the public's benefit, does not make him a state actor. *See Rendell–Baker,* 457 U.S. at 842, 102 S.Ct. at 2772; *Gallagher v. "Neil Young Freedom Concert",* 49 F.3d 1442, 1457 (10th Cir.1995) (finding that providing security at building leased from government was not exclusive state function). Moreover, CHA's employment of in-house armed security guards with lobby duties identical to those of the contract security guards does not change our conclusion, as this fact does not demonstrate that Byles performed an *exclusive* state function.

Plaintiff's reliance on *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), is also misplaced. In *West* the Supreme Court concluded that a private physician under contract with the state to provide medical care to prisoners was a state actor. Under state law the only medical care that the inmates could receive was that provided through the state. *West,* 487 U.S. at 55, 108 S.Ct. at 2258–59. In reaching its conclusion, the Court reasoned that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West,* 487 U.S. at 56, 108 S.Ct. at 2259. This language in *West* indicates that a state cannot limit its accountability for the performance of functions that it has an affirmative constitutional obligation to provide.[6] In this case, however, CHA bore no affirmative constitutional duty to provide security in the lobbies of CHA buildings.[7] *West* therefore provides no support

same powers as city police act under color of state law. *United States v. Hoffman,* 498 F.2d 879, 881 (7th Cir.1974).

**6.** The proper interpretation of *West* is the subject of some dispute, perhaps because the Court did not expressly apply one of its previously developed tests of state action. *Compare Gallagher,* 49 F.3d at 1456 n. 3 (citing *West* under "joint action" analysis) *with Rockwell v. Cape Cod Hosp.,* 26 F.3d 254, 258 (1st Cir.1994) (citing *West* under "public function" analysis). In our view, *West* is grounded along lines similar to the "public function" test. Whereas the "public function" test prohibits a state from avoiding re-

sponsibility for traditional and exclusive state functions, *West* prohibits a state from avoiding responsibility for functions that it has an affirmative constitutional duty to provide. Both types of functions are so closely associated with government that a state cannot limit its accountability for their performance, even if they are carried out by private parties.

**7.** In fact, CHA had no statutory obligation to provide security services for its residents. The Illinois statute that authorizes CHA to establish police and security forces also provides that the CHA shall not be "liable for failure to provide a security or police force or, if a security or police

for plaintiff's claim that Byles was a state actor.

## III.

In conclusion, Byles was not a state actor when he shot Wade. If Wade's allegations are true, he may very well have a cognizable tort claim, but it is not one of constitutional dimension. We therefore AFFIRM the district court's grant of summary judgment for the defendants.

force is provided, for failure to provide adequate police protection or security...." 310 ILCS

