NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0773n.06
Filed: October 18, 2006

No. 05-1113

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANTHONY M. DURANTE | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| FAIRLANE TOWN CENTER ET AL., | ) | **O P I N I O N** |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:     GIBBONS and McKEAGUE, Circuit Judges; and FORESTER, Senior District Judge.[*]

**McKEAGUE, Circuit Judge.**  Anthony Durante received a used cell phone as a gift, but his life is none the richer for it.  What began as a request to activate the cell phone at a local Verizon Wireless ("Verizon") store ended up with Durante being arrested and transported by mall security to the Dearborn Police Department (the "DPD"), and eventually filing the instant action for violation of his civil rights.

Upon review of the record, we affirm the district court's grant of summary judgment in favor of the defendants.

---

[*]The Honorable Karl S. Forester, United States Senior District Judge for the Eastern District of Kentucky, sitting by designation.

**I.**

In December 2001, Durante ventured to the Verizon store located at the Fairlane Town

Center (the "FTC") in Dearborn, Michigan.  He asked to have his cell phone activated, but was told

that it had been stolen and could not be activated.  After several minutes of escalating tension, FTC

security guards were called.  Although the parties' accounts differ, Durante asserts that the security

guards searched him, took his money, arrested and detained him for several hours, and transported

him to the DPD station, where he was booked for misdemeanor criminal trespass.  He was later

acquitted of the trespass charge.

Acting *pro se*, Durante filed the instant action, asserting three claims against Verizon, the

FTC, the DPD, and several individuals: (a) false arrest and imprisonment; (b) violation of 42 U.S.C.

§ 1983; and (c) violation of 42 U.S.C. § 1985(3).  The district court  dismissed the state law false-

arrest claim and referred the federal claims to a magistrate judge.  The defendants filed separate

motions for summary judgment which, after hearing arguments, the magistrate judge recommended

that the district court grant.  The district court subsequently adopted the recommendations of the

magistrate judge, and the case reaches this court on Durante's appeal of the grant of summary

judgment on his 42 U.S.C. § 1983 claims.[1]

---

[1]Durante does not address his 42 U.S.C. § 1985(3) claims in any significant manner.  Thus, he has waived those claims for purposes of this appeal. *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005); *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

**II.**

We review *de novo* the order granting summary judgment to the defendants. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, we view the evidence and draw all reasonable inferences in favor of Durante as the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Yet, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

### A.    **The FTC Defendants**

"A § 1983 claim must present two elements: (1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)). The magistrate judge did not reach (1) because he concluded that the private defendants did not act under color of state law, and, therefore, Durante could not make out a § 1983 claim. Durante argues that this was error.

As we explained in *Wittstock*,

> A private actor may be considered a person acting under color of state law (a state actor) if "(1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the state' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'"

*Id.* (quoting *Tahfs*, 316 F.3d at 590-91); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (citation omitted). Only the public function and nexus tests are applicable here.

### 1.    **Public Function Test**

The term "public function" is a bit of a misnomer, at least in the context of private actors. As explained by the First Circuit, "[i]n order for a private actor to be deemed to have acted under color of state law, it is not enough to show that the private actor performed a public function." *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994). Rather, the private actor must perform a public function which has traditionally *and* exclusively been reserved to the State. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). This test is difficult to satisfy. "While many functions have been *traditionally* performed by governments, very few have been *exclusively* reserved to the State." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir. 1995) (internal quotations omitted; emphasis added); *see also Chapman*, 319 F.3d at 833-34 (explaining that "the public function test has been interpreted narrowly"). "Only functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this

category of state action." *Chapman*, 319 F.3d at 833-34 (internal citations omitted). In short, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *West v. Atkins*, 487 U.S. 42, 52 n.10 (1988) (internal quotations omitted).

While "[t]he Supreme Court has expressly left open the question whether and under what circumstances private police officers may be said to perform a public function for purposes of § 1983," *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 163-64 (1978)), *cert. denied*, – S. Ct. –, 2006 WL 1894343 (2006), "our sister circuits have consistently held that the mere fact that the performance of private security functions may entail the investigation of a crime does not transform the actions of a private security officer into state action," *Chapman*, 319 F.3d at 834 (citing *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996); *Gallagher*, 49 F.3d at 1457; *White v. Scrivner Corp.*, 594 F.2d 140, 142-43 (5th Cir. 1979)). There are instances, however, when the performance of certain functions by a private security officer crosses the line from private action to state action. For example, the Seventh Circuit has held that private police officers licensed to make arrests could be state actors under the public function test. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627-30 (7th Cir. 1999). The key distinction lies in whether the private defendant's police powers delegated by the State are plenary, or merely police-like. In the latter instance, the private action is not one considered *exclusively* reserved to the State, and is thus not undertaken under color of law. *See Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 896-97 (7th Cir. 2004) (finding that hospital security guards who

had authority to patrol and eject people but not to carry guns and who had to call the police if someone became hostile and belligerent were not "state actors"). A subset of such cases is the salient example of a private institution's security employees being dispatched to protect its interests or enforce its policies, e.g., by availing itself of the common law shopkeeper's privilege. *Chapman*, 319 F.3d at 833-34.

In *Romanski*, a panel of this court found that private security officers working in a casino acted under color of state law when they detained, arrested, and escorted a woman from the casino premises. 428 F.3d at 638. Crucial to its decision was the fact that the officers were licensed under M.C.L. § 338.1079. A private security officer licensed under that provision has certain powers, as described in M.C.L. § 338.1080:

> A private security police officer, as described in [M.C.L. § 338.1079], who is properly licensed under this act has the authority to arrest a person without a warrant as set forth for public peace officers . . . when that private security police officer is on the employer's premises. Such authority is limited to his or her hours of employment as a private security police officer and does not extend beyond the boundaries of the property of the employer and while the private security police officer is in the full uniform of the employer.

Being licensed further means that the private security police officer's "qualifications for being so licensed were vetted by Michigan's department of state police . . . and that [the officer] was subject to certain statutes administered by that department." *Romanski*, 428 F.3d at 638. The panel concluded that "because it is undisputed that [the private security police officer] was in fact duly licensed under M.C.L. § 338.1079 and was in fact on duty at all times relevant to this case," the officer was a state actor as a matter of law. *Id.* at 640.

There is no evidence before us that the FTC security guards were licensed under M.C.L. §338.1079. The fact that the they were security guards does not, in itself, imply that they were licensed – M.C.L. § 338.1079(2) expressly provides that private security guards are not required to be licensed. Durante did not allege that they were so licensed, nor did he take any depositions or seek discovery on this issue. Accordingly, *Romanski* lends Durante no support.

Nor does Durante find support elsewhere under federal or state law. First, a plaintiff who argues that a private actor acted under color of state law must offer some historical analysis on whether the power exercised is one that is traditionally the exclusive prerogative of the state. *Wittstock*, 330 F.3d at 902; *Ellison v. Garbarino*, 48 F.3d 192, 196 (6th Cir. 1995). Durante has offered no historical analysis of a merchant's arrest and transport powers (if any) for criminal trespass under Michigan law. "Considering that plaintiff bears the burden on this issue, this failure alone renders this test inapplicable." *Ellison*, 48 F.3d at 196.

Moreover, even if Durante had offered some historical analysis, he has not shown that the FTC defendants exercised a power exclusively left to the State of Michigan, and delegated to them by the State. Numerous cases decline to find that a private security guard acted under color of state law based on the authority of the common law shopkeeper's privilege. Michigan has codified this privilege:

> In a civil action against a library or merchant, an agent of the library or merchant, or an independent contractor providing security for the library or merchant for false imprisonment, unlawful arrest, assault, battery, libel, or slander, if the claim arises out of conduct involving a person suspected of removing or of attempting to remove, without right or permission, goods held for sale in a store from the store or library materials from a library, . . . and if the merchant, library, agent, or independent contractor had probable cause for believing and did believe that the plaintiff had

> committed or aided or abetted in the larceny of goods held for sale in the store, or of library materials, . . . damages for or resulting from mental anguish or punitive, exemplary, or aggravated damages shall not be allowed a plaintiff, unless it is proved that the merchant, library, agent, or independent contractor used unreasonable force, detained the plaintiff an unreasonable length of time, acted with unreasonable disregard of the plaintiff's rights or sensibilities, or acted with intent to injure the plaintiff.

M.C.L. § 600.2917(1).

A private security guard who detains and arrests a customer to advance the business interests of his employer is not normally performing a "function exclusively reserved to the State." *Chapman,* 319 F.3d at 834. Apparently because Durante was not suspected of shoplifting, but rather criminal trespass, the magistrate judge concluded that the security guards were acting pursuant to a shopkeeper's right to control access to his business premises. Although not incorporated in the State's codification of the shopkeeper's privilege, the underlying motivation for the privilege as to shoplifting applies equally in the criminal trespassing situation: "A storekeeper's central motivation in detaining a person whom he believes to be in the act of stealing his property is self-protection, not altruism. Such action cannot logically be attributed to the state." *Id.* The detention and removal of a criminal trespasser is an essential power of any shopkeeper or other property owner and not one left exclusively to the State of Michigan. Other courts have agreed and found that the power of arrest for criminal trespass is not exclusively reserved to the state. *See, e.g.*, *Wade*, 83 F.3d at 906; *Spencer v. Lee*, 864 F.2d 1376, 1380 (7th Cir. 1989) (noting that powers of arrest and self-defense are not exclusively governmental functions); *Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1114-15 (10th Cir. 1987) (holding that arrest and transportation of criminal trespasser by private actor was not made under color of state law).

Finally, assuming *arguendo* that the FTC defendants overstepped their authority as private actors in arresting and transporting Durante for misdemeanor criminal trespass, their actions still do not amount to state action. The first prong of the *Lugar* analysis requires that the deprivation "be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." 457 U.S. at 937. For public employees with the apparent authority to engage in the challenged act, the first prong is satisfied even if they violate state law or policy. *Monroe v. Pape*, 365 U.S. 167, 184-85 (1961). For private actors, on the other hand, the first prong requires that the conduct be authorized by law or policy. As the Supreme Court in *Lugar* explained, "private misuse of a state statute does not describe conduct that can be attributed to the State." 457 U.S. at 941. If "the conduct of which [the plaintiff] complained [can] not be ascribed to any governmental decision," that conduct cannot be characterized as made under color of state law. *Id.* at 940; *see also Civil Rights Cases*, 109 U.S. 3, 17 (1883) ("[C]ivil rights, such as are guarantied by the constitution against state aggression, cannot be impaired by the wrongful acts of individuals, unsupported by state authority in the shape of laws, customs, or judicial or executive proceedings. The wrongful act of an individual, unsupported by any such authority, is simply a private wrong, or a crime of that individual. . . ."); *Wyatt v. Cole*, 994 F.2d 1113, 1117-18 (5th Cir. 1993); *Hoai v. Vo*, 935 F.2d 308, 313-14 (D.C. Cir. 1991); *Jones v. Poindexter*, 903 F.2d 1006, 1010-11 (4th Cir. 1990); *Collins v. Womancare*, 878 F.2d 1145, 1153 (9th Cir. 1989). Simply put, a vigilante may, in a sense, perform a "public" act, but he does not make himself a state actor by doing so.

### 2. <u>Nexus Test</u>

Durante also argues that the FTC defendants qualify as state actors under the nexus test. This contention merits only brief discussion. To satisfy the nexus test, a claimant "must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 834. The nexus can be established with evidence of a customary or preexisting arrangement between the government and the private actor. *Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir. 1982). Here, Durante has failed to present evidence of a preexisting arrangement between the FTC and the government, relying instead on his conclusory assertion that, because he was transported by FTC security to the DPD station without objection by the department, an arrangement must have existed. He presents no evidence of detainee transportation happening on a prior occasion, let alone any evidence from which we could infer a customary or preexisting arrangement.

Durante has failed to offer any evidence that the FTC defendants acted under color of state law, either under the public function or nexus tests. Accordingly, summary judgment stands on his 42 U.S.C. § 1983 claim against them.

### B. <u>Durante's Remaining Claims</u>

Likewise, summary judgment is affirmed on Durante's claims against Verizon and the DPD. There is no evidence that Verizon or its employees acted under color of state law. Nor is there any evidence of a custom of indifference and acquiescence in the violation of citizens' civil rights by the

DPD. Thus, for the reasons explained more fully by the magistrate judge, Durante's claims against them fail.

## III.

Durante also argues that he should be given leave to remedy certain defects in his complaint. Durante is not an attorney and initially prosecuted this case *pro se*. We generally hold *pro se* pleadings to a less stringent standard than those drafted by an attorney. Nevertheless, liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law. The magistrate judge was correct in explaining that even a *pro se* plaintiff must state and support all elements of a substantive claim to avoid an adverse judgment.

Fed. R. Civ. P. 15 has been construed to establish a liberal policy with respect to amendments of defective pleadings. Durante did not, however, file a motion seeking to amend his complaint. In order to be granted leave to amend, a party must provide specific facts to support a claim. As explained herein, as well as by the magistrate judge, Durante has not provided such facts, even when given ample and lenient opportunity by the magistrate judge. Without such facts (or a motion to amend, for that matter), leave to amend his complaint would be fruitless.

## IV.

For the foregoing reasons, we AFFIRM summary judgment in favor of the defendants.