*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0152p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BRENDA LINDSEY; HENRY HOBSON, JR.; SARAH
GULLEY; ROGER GENTRY; BERTHA ARNOLD;
DIONNE ECHOLS; WILLIAM SLATEN, JR.,
>*Plaintiffs-Appellants,*

  *v.*

DETROIT ENTERTAINMENT, LLC, d/b/a Motor City
  Casino, a Michigan Limited Liability Company,
>*Defendant-Appellee.*

No. 04-2424

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-71129—George C. Steeh, District Judge.

Argued: March 13, 2007

Decided and Filed: May 1, 2007

Before: MARTIN and CLAY, Circuit Judges; POLSTER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Amos E. Williams, Detroit, Michigan, for Appellants. Rosalind Rochkind, GARAN, LUCOW & MILLER, Detroit, Michigan, for Appellee. **ON BRIEF:** Amos E. Williams, Detroit, Michigan, for Appellants. Rosalind Rochkind, Robert F. MacAlpine, Megan K. Cavanagh, GARAN, LUCOW & MILLER, Detroit, Michigan, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. Plaintiffs are seven unrelated individuals who were each detained by employees of Defendant Detroit Entertainment, L.L.C., which owns and operates MotorCity Casino, for picking up allegedly abandoned tokens or credits found in Defendant's slot machines. Plaintiffs brought this action under 42 U.S.C. § 1983, claiming that Defendant violated their constitutional rights under color of state law when Defendant's security personnel detained Plaintiffs. Plaintiffs also sought to represent a class of similarly situated individuals. The district court denied class certification, and granted summary judgment in favor of Defendant, holding that Plaintiffs could not

---

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

demonstrate that Defendant's actions constituted "state action" for the purpose of § 1983. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## BACKGROUND

This case concerns a practice that Defendant refers to as "slot-walking." "Slot-walking" is the practice of picking up tokens found on or around slot machines which appear to have been abandoned by the machine's original user. Plaintiffs in this case are Brenda Lindsey, Henry Hobson, Jr., Sarah Gulley, Roger Gentry, Bertha Arnold, Dionne Echols, and William Slaten, Jr. Although the stories of the individual plaintiffs vary in their detail, for purposes of this appeal, the specifics of Plaintiffs' allegations are immaterial to the issues before the Court.[1] Generally, Plaintiffs in this case all allegedly shared a relatively similar experience. Each plaintiff was a business invitee of Defendant, who entered Defendant's casino for the purpose of recreational gaming between April 14, 2000 and March 22, 2001. Each plaintiff, with the exception of Hobson,[2] took possession of one or more tokens from one of Defendant's slot machines. In each case, the dollar value of tokens taken by Plaintiffs was small, ranging from the two dollars worth of tokens that Plaintiff Echols recovered from the tray of a slot machine, to a single twenty-five cent credit that Plaintiff Gulley found on an allegedly unattended slot machine. All Plaintiffs claim that the tokens or credits of which they took possession had been abandoned by the original operator of the slot machine on which the tokens or credits were found.

After taking possession of the tokens or credits, each plaintiff was approached by Defendant's security personnel, and each plaintiff was forced to accompany Defendant's security personnel to a locked detention room. The length of Plaintiffs' detentions varied; Plaintiff Slaten was released within an hour, while several plaintiffs were allegedly detained for several hours. But in any event, after being held in Defendant's detention room for some period of time, each plaintiff was told to leave the casino and was informed that he or she was not allowed to return to Defendant's casino.

On March 21, 2003, Plaintiffs filed a complaint in the Eastern District of Michigan, alleging that Defendant violated 42 U.S.C. § 1983, by depriving Plaintiffs of their rights secured by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The thrust of Plaintiffs' complaint, however, is their claim that Defendant's actions constituted an unreasonable seizure in violation of the Fourth and Fourteenth Amendments. Plaintiffs also sought to represent a class of similarly situated individuals which, by Plaintiffs' estimation, included approximately one-hundred and fifty people, but not less than seventy-five or more than seven-hundred and fifty people. Plaintiffs defined this class as:

> persons who found coins or tokens left unattended on floors, chairs, or similar lack of physical possession by the owner and/or those persons who found coins, tokens, or credits left in the return tray or on unattended and unused, at the time, gaming machines or who were given permission to take unused credits or tokens by the owner of the tokens or credits, without intent to defraud.

J.A. at 18.

---

[1] Plaintiffs Lindsey, Gentry, and Arnold did not show up for their depositions despite a court order requiring them to do so. However, since their claims were not dismissed by the district court as a result of their failure to comply with discovery requests, and their failure to attend discovery does not affect the resolution of the issues on appeal, we assume for purposes of this opinion that the allegations in their complaint are true.

[2] Plaintiff Hobson became involved with Defendant's security personnel when his companion, Miss Lula Bryant, found a token in an empty slot machine.

Defendant moved for summary judgment on July 1, 2003. Plaintiffs moved to certify the class on the following day. On September 2, 2003, the district court denied Defendant's motion for summary judgment, without prejudice, pending discovery. On February 6, 2004, the district court denied Plaintiffs' motion for class certification, holding that Plaintiffs could not meet the necessary requirements of Federal Rule of Civil Procedure 23. Plaintiffs moved this Court for permission to bring an interlocutory appeal, and we denied permission on June 15, 2004.

On August 2, 2004, Defendant renewed its motion for summary judgment. The district court granted Defendant's motion on October 14, 2004, and dismissed the case. The district court held that summary judgment in favor of Defendant was appropriate because Plaintiffs could not demonstrate that Defendant's actions constituted state action. The district court considered Plaintiffs' argument that the district court decisions of *Romanski v. Detroit Entertainment, L.L.C.*, 265 F. Supp. 2d 835 (E.D. Mich. 2003) and *Smith v. Detroit Entertainment, L.L.C.*, 338 F. Supp. 2d 775 (E.D. Mich. 2004) affected the outcome of the case, but concluded that, under the Sixth Circuit's en banc decision in *Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003), Plaintiffs could not demonstrate that Defendant's security personnel were state actors. On November 5, 2004, Plaintiffs filed a timely notice of appeal. Briefing for this appeal was held in abeyance pending the Sixth Circuit's disposition of *Romanski v. Detroit Entertainment, L.L.C.*, which was decided on October 28, 2005. 428 F.3d 629 (6th Cir. 2005).

## DISCUSSION

Plaintiffs appeal from the district court's order granting summary judgment in favor of Defendants. "This Court reviews de novo a district court's decision to grant summary judgment." *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 637 (6th Cir. 2004) (citing *Cockrel v. Shelby County School Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001)). Summary judgment is required if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute over a material fact is only a 'genuine issue' if a reasonable jury could find for the nonmoving party on that issue." *Gage Prods. Co.*, 393 F.3d at 637; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, this Court must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiffs brought their claims against Defendant pursuant to Title 42, United States Code, § 1983. Section 1983 states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In order to prevail on a § 1983 claim, Plaintiffs must demonstrate that Defendant deprived them of their "rights, privileges, or immunities secured by the Constitution" under color of state law. The issue in this appeal is whether Plaintiffs can demonstrate that Defendant acted "under color of state law" by showing that Defendant's conduct constituted state action. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982) (holding that state action for the purpose of the Fourteenth Amendment constitutes action under color of state law for the purpose of § 1983). Section 1983 does not, as a general rule, prohibit the conduct of private parties acting in their individual capacities. "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'" *Id.* at 936 (quoting *Flagg Bros, Inc. v. Brooks*, 436 U.S.

149, 156 (1978)).  Drawing a line between private and governmental conduct preserves an area of individual freedom by limiting the reach of federal law, avoids the imposition of liability on a state for actions outside its control, and assures that constitutional standards are invoked only when the state is responsible for the conduct about which the plaintiff complains. *Brentwood Acad. v. Tenn. Secondary School Athletic Assoc.*, 531 U.S. 288, 295 (2001).  However, "[a] private actor acts under color of state law when its conduct is 'fairly attributable to the state.'" *Romanski*, 428 F.3d at 636 (quoting *Lugar*, 457 U.S. at 937).

"What [conduct] is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad.*, 531 U.S. at 295.  The Supreme Court and this Court, however, have provided several significant milestones to guide our inquiry as to whether Defendant's conduct constitutes state action.  As we recognized in *Chapman*, "[t]he Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test."[3] 319 F.3d at 833 (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)).  Of these three tests, the only one relevant to the instant case is the public function test.  Under the public function test, courts have found "state action present in the exercise by a private entity of powers traditionally exclusively reserved to the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974).  The Supreme Court has found this requirement satisfied where the state permitted a private entity to hold elections, *Terry v. Adams*, 345 U.S. 461, 469-70 (1953), allowed a private company to own a town, *Marsh v. Alabama*, 326 U.S. 501, 505-06 (1946), or established private ownership of a municipal park. *Evans v. Newton*, 382 U.S. 296, 302 (1966).  However, the Supreme Court has explicitly declined to decide the question of "whether and under what circumstances private police officers may be said to perform a public function for purposes of § 1983." *Romanski*, 428 F.3d at 636 (citing *Flagg Bros.*, 436 U.S. at 163).[4]

In *Romanski*, this Court directly addressed the question that the Supreme Court reserved in *Flagg Brothers*. *Romanski* concerned the same defendant, Detroit Entertainment L.L.C., and similar allegations.  Stella Romanski patronized MotorCity Casino to gamble and enjoy the lunch buffet. 428 F.3d at 632.  She found a five cent token lying in the tray of a slot machine, which she thought was abandoned, and she took possession of the token. *Id.*  Romanski was then approached by a uniformed casino employee who required Romanski to accompanying him to the "security office," also known as the "interview room," a small, windowless room located off the casino's main floor. *Id.* at 632-33.  Once in the interview room, the casino's security personnel accused Romanski of stealing, removed one nickel from her winnings, photographed her, copied her drivers license and social security card, and ejected her from the casino for a period of six months. *Id.* at 633. Romanski brought suit under 42 U.S.C. § 1983. *Id.* at 634.  The district court instructed the jury that, as a matter of law, the casino and its defendant security personnel were acting under color of state law at the time of the incident. *Id.* at 635.  The jury returned a verdict in favor of Romanski

---

[3] The Supreme Court has declined to determine whether or not the different "tests" are "actually different in operation" or "simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in such a situation." *Lugar*, 457 U.S. at 939.

[4] The Court in *Flagg Brothers* stated:

[W]e would be remiss if we did not note that there are a number of state and municipal functions not covered by our election cases or governed by the reasoning of [*Marsh v. Alabama*, 326 U.S. 501 (1946)] which have been administered with a greater degree of exclusivity by States and municipalities than has the function of so-called "dispute resolution."  Among these are such functions as education, fire and police protection, and tax collection.  We express no view as to the extent, if any, to which a city or State might be free to delegate to private parties the performance of such functions and thereby avoid the strictures of the Fourteenth Amendment.

436 U.S. at 163-64 (footnote omitted).

and the casino appealed, arguing, *inter alia*, that the district court erred in holding the casino and its employees to be state actors.

*Romanski* affirmed the judgment of the district court on the question of state action. *Id.* at 632. *Romanski* held that "[w]here private security guards are endowed by law with plenary police powers such that they are *de facto* police officers, they may qualify as state actors under the public function test." *Id.* at 637. *Romanski* reasoned that, because the casino's security personnel were licensed under § 29 of Michigan's Private Security Business and Security Alarm Act, (codified at Mich. Comp. Laws § 338.1079), their qualifications were vetted by the Michigan department of state police, and they were subject to certain statutes administered by that department. *Id.* at 638 (citing Mich. Comp. Laws §§ 338.1079, 338.1067, and 338.1069). And perhaps more importantly, being licensed under § 339.1079 meant that the casino's security personnel "ha[d] the authority to arrest a person without a warrant as set forth for public peace officers." *Id.* (quoting Mich. Comp. Laws § 338.1080). True, this authority was limited: The casino's security personnel's plenary powers of arrest extended only to the employee's hours of employment, it did not extend beyond the boundaries of the employer's property, and it was limited to situations where the employer's security personnel were in the full uniform of their employer. *See* Mich. Comp. Laws § 338.1080. But the facts of *Romanski* made these limitations inapplicable, and the *Romanski* court held that the possession of this statutory arrest authority made the casino's security personnel state actors as a matter of law. *Romanski*, 428 F.3d at 638.

Plaintiffs argue that *Romanski* supports a finding that Defendant's security personnel were likewise state actors in this case. We disagree. Unlike *Romanski*, where it was undisputed that Defendant's security personnel were licensed under Mich. Comp. Laws § 338.1079, see *id.* at 633, here, exactly the opposite appears to be the case. Plaintiffs' complaint alleges that:

> At the time of the seizure and detention of all of the named Plaintiffs but Slaten, none of [Defendant's] security guards were authorized to make misdemeanor arrests. In the last part of 2000, some of [Defendant's] security personnel became authorized, by Michigan law, to make misdemeanor arrests but, to this date, Plaintiffs are informed and believe that not all of [Defendant's] security personnel have misdemeanor arrest authority.

J.A. at 17.[5] If Defendant's security personnel had in fact been licensed pursuant to Mich. Comp. Laws § 338.1079, they would have had misdemeanor arrest authority at the time that they seized and detained Plaintiffs. Hence, Plaintiffs' allegation that Defendant's security personnel lacked such authority is by implication an assertion that Defendant's security personnel were not licensed under § 338.1079. Moreover, at oral argument, Plaintiffs were asked to point the Court to any information in the record that suggested that Defendant's security personnel were licensed pursuant to § 338.1079 at the time of Plaintiffs' arrests, and Plaintiffs could point to no such information.[6] Plaintiffs have therefore not carried their burden of demonstrating that any of Defendant's security guards were licensed under § 338.1079, and we must proceed under the assumption that all of Defendant's security personnel who interfaced with Plaintiffs were not so licensed.[7]

---

[5] There is no information in the record as to whether the security personnel who detained Plaintiff Slaten were licensed.

[6] Plaintiffs did direct this Court to the district court's opinion denying Plaintiffs' motion for class certification, where the district court stated that "six of the seven named plaintiffs were admittedly not seized by licensed security guards." J.A. at 143. However, the district court was merely analyzing the language of Plaintiffs' complaint excerpted above, rather than affirmatively asserting that one plaintiff was detained by a licensed security guard.

[7] While this assumption is somewhat troubling with respect to Plaintiff Slaten, it must ultimately govern his case as well. The assumption is troubling because there is no information in the record pointing either towards or against a finding that the security guards who arrested Slaten were licensed, and the information was at all times within the

The fact that Defendant's security personnel were *not* licensed in this case means that, under the facts of this case, Defendant's conduct in detaining Plaintiffs was not "fairly attributable to the state." *Lugar*, 457 U.S. at 937. The relevance of the Michigan licensure statute can be seen by comparing the outcomes of two Seventh Circuit cases, *Wade v. Byles*, 83 F.3d 902 (7th Cir. 1996) and *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623 (7th Cir. 1999), both of which influenced this Court's decision in *Romanski*. 428 F.3d at 637-38.

*Wade* concerned Byles, a privately-employed security guard who protected a government building, who seriously injured Wade. 83 F.3d at 903. The Seventh Circuit affirmed summary judgment in favor of Byles on the ground that Wade could not demonstrate state action. *Id.* at 907. The court reasoned that Byles had no greater power than other private security guards. *Id.* at 906. Although his powers, which included carrying a handgun, arresting people for criminal trespass, and using deadly force in self-defense, had "all . . . been traditionally exercised by the sovereign via the police, none has been *exclusively* reserved to the police." *Id.*

*Payton* distinguished *Wade* and held that the defendants, who were security personnel licensed as special policemen under a city ordinance, could be state actors for the purpose of a § 1983 claim. 184 F.3d at 630. The court reasoned that "if the state cloaks private individuals with virtually the same power as public police officers, and the private actors allegedly abuse that power to violate a plaintiff's civil rights, that plaintiff's ability to claim relief under § 1983 should be unaffected." *Id.* at 629. Noting that the defendant in *Wade* was limited to using his power in a limited area of his place of employment, and that his arrest power was limited, *Payton* distinguished *Wade* and held that the plaintiffs had stated a cause of action because "no legal difference exists between a privately employed special officer with full police powers and a regular Chicago police officer." *Id.* at 630.

*Romanski* analyzed the distinction between these cases, and concluded that:

> *Payton* illustrates a line that has been drawn in the case law. The line divides cases in which a private actor exercises a power traditionally reserved to the state, but not exclusively reserved to it, e.g., the common law shopkeeper's privilege, from cases in which a private actor exercises a power exclusively reserved to the state, e.g., the police power.

*Romanski*, 428 F.3d at 637.

This analysis demonstrates that the fact that Michigan delegated a part of the police power to licensed private security guards, which it had traditionally and exclusively reserved for itself, was the key fact that justified finding state action in *Romanski*. Although the police power that Michigan bestowed upon licensed security guards pursuant to Mich. Comp. Laws § 338.1080 was limited in certain respects, the plaintiff in *Romanski* could point to an identifiable police power–the power of arrest–which was not possessed by the citizens of Michigan at large, but instead resided only in the state, its agents, and those persons who the state empowered and regulated by statute. By contrast, Plaintiffs here cannot point to any powers above and beyond those possessed by ordinary citizens

---

control of Defendant. Nevertheless, it is black-letter law that "[t]he party opposing the motion [for summary judgment] may not rely solely on the pleadings . . . ; if the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (quoting *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001)). It was, of course, Plaintiff Slaten's burden, as the party who bears the burden of demonstrating that Defendant acted under color of state law, to come forward with evidence that Defendant's security personnel were in fact licensed under Mich. Comp. Laws § 338.1079. Moreover, there is no allegation that Defendant prevented Plaintiff Slaten's discovery on this issue, or that the time in which the district court allowed Plaintiff Slaten to conduct discovery was insufficient for him to procure this information. In short, Plaintiff Slaten has not carried his burden, nor has he excused his failure to carry it.

that the state of Michigan had delegated to Defendant's unlicensed security personnel at the time of Plaintiffs' arrests. The instant case is thus squarely within the rule of *Chapman*, where this Court held that a merchant exercising the "shopkeeper's privilege" was not a state actor under the public function test. 319 F.3d at 834. Because Plaintiffs cannot demonstrate that Defendant's security personnel were licensed under Mich. Comp. Laws § 338.1079, they cannot show that Defendant engaged in action attributable to the state.[8] Plaintiffs therefore cannot demonstrate that Defendant deprived them of their rights secured by the Constitution by acting under color of state law, and their § 1983 claim must fail.[9] We therefore affirm the judgment of the district court.[10]

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment in favor of Defendant.

---

[8] We note that we are not the first panel to conclude that *Romanski* does not apply to security guards that are not licensed under Mich. Comp. Laws § 338.1079. *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 451-52 (6th Cir. 2007) (distinguishing *Romanski* on the ground that the plaintiff had "not argued at any point in this litigation that [the defendant security guards] were 'private security police officers' pursuant to [Mich. Comp. Laws] §§ 338.1079-338.1080"); *Durante v. Fairlane Town Ctr.*, No. 05-1113, 201 F. App'x 338, 342 (6th Cir. Oct. 18, 2006) (unpublished) (holding that *Romanski* did not apply to the security guards of Fairlane Town Center because there was no evidence that the security guards were licensed pursuant to Mich. Comp. Laws § 338.1079).

[9] Additionally, Plaintiffs argue that the fact that casino gambling is a highly regulated business means that the actions of Defendant's security personnel can constitute state action for the purpose of § 1983. *See, e.g.*, The Michigan Gaming Control and Revenue Act, Mich. Comp. Laws §§ 432.201 to 432.256. Specifically, Plaintiffs rely on Rule 1003 of the Michigan Gaming Control Board, which establishes various procedures for detained or arrested persons. Plaintiffs did not make this argument until oral argument, and they therefore have waived it. And in any event, we do not consider the fact that the state pervasively regulates casinos in itself to be sufficient to transform the actions of Defendant's employees, including Defendant's security personnel, into actions of the state.

[10] Because we affirm the district court's grant of summary judgment in favor of Defendant, we need not consider Plaintiffs' argument that the district court abused its discretion by failing to certify Plaintiffs' class action.