NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0347n.06
Filed: May 19, 2009

Nos. 08-5492, 08-5493

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KROWTOH II LLC,

     Plaintiff-Appellee and Cross-Appellant,

v.

EXCELSIUS INTERNATIONAL LTD, *et al.*

     Defendants-Appellants and Cross-
     Appellees.

_____/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

BEFORE:    CLAY and GIBBONS, Circuit Judges; GREER, District Judge.[*]

    **CLAY, Circuit Judge**. Plaintiff, Krowtoh II, LLC, filed suit against Frank Schwarzenau, ExCelsius International GmbH ("ExCelsius GmbH"), and ExCelsius International Ltd. ("ExCelsius Ltd."), Defendants, and Shaun Ahern,[1] invoking the district court's diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff sought damages and equitable relief arising from ExCelsius Ltd.'s alleged breach of the franchise agreement it entered into with Plaintiff. Based on the failure of Ahern and Defendants to respond to discovery and other court orders, the district court ordered entry of default

_____

[*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

[1]Shaun Ahern is not a party to this appeal. For purposes of this appeal, the term "Defendants" refers only to Schwarzenau, ExCelsius Ltd., and ExCelsius GmbH.

1

with respect to the liability issues involved in the case. After a trial on the issue of damages, the district court awarded Plaintiff a total of $781,226 in damages arising from Defendants' breach. In this appeal, Defendants seek reversal of the district court's denial of their motion to set aside the entry of default, as well as the district court's award of damages to Plaintiff. Plaintiff cross-appeals the district court's order, arguing that the district court failed to award the full amount of damages to which it was entitled.

For the reasons set forth below, we **REVERSE** the district court's judgment, **VACATE** the award of damages, and **REMAND** for further proceedings.

I.      BACKGROUND

A.      Factual History

Prior to 2003, Hotwork Europe provided "heat up cool down" or "hotwork" services to companies with industrial furnaces. As the parties explain in their briefs, industrial furnaces operate continuously for many years at high temperatures. When the furnaces require maintenance, the temperature of the furnaces must be reduced. However, improper cooling procedures can damage the lining of the furnace which, although it can withstand high temperatures, is susceptible to cracking or other damage when the temperature changes too rapidly. Hotwork Europe and similar companies use highly specialized combustion equipment to slowly cool the temperature of the furnace prior to maintenance and, after maintenance, to slowly return the furnace to its high operating temperature.

In 2003, Fosbel USA, the parent company of Hotwork Europe, decided to sell Hotwork Europe. In 2003, certain individuals previously associated with Hotwork Europe formed Hotwork

USA ("Hotwork"),[2] and purchased the assets of Hotwork Europe, including the company's intellectual property rights and approximately 125 sets of combustion equipment. Ahern and Schwarzenau, previously employed at different branches of Hotwork Europe, formed ExCelsius GmbH to provide hotwork services in Europe. To fulfill this goal, ExCelsius Ltd., another company that Ahern and Schwarzenau formed, entered into a franchise agreement with Hotwork USA in June of 2003 (the "Agreement").

The Agreement set the term of the franchise for seven years, with the option to renew for an additional five years. Under the terms of the Agreement, ExCelsius Ltd. was required to pay a "monthly operating fee" equal to five percent of the monthly net sales within the operating territory defined by the Agreement. For sales made outside of that territory, the Agreement required ExCelsius Ltd. to pay Hotwork a ten percent "commission" in addition to the operating fee. The parties also agreed that Hotwork would lease sets of specialized combustion equipment to ExCelsius Ltd. for sixty months for $8500 per month, and that ExCelsius Ltd. would own the equipment at the end of that period. In addition to equipment, ExCelsius Ltd. received "jobs in process," work orders, and customer lists from Hotwork. (J.A. 2329.) However, the parties expressly agreed that the "ownership of all right, title, and interest in and to the licensed trade name, trademarks . . . , and . . . goodwill . . . shall remain solely with [Hotwork]." (J.A. 42.) In addition, the Agreement restricted ExCelsius Ltd. and its principals from "engaging directly or indirectly in any business . . . similar to that which is created by this Agreement" for a period of two years following the termination of

[2]Plaintiff, Krowtoh II, previously operated using the name Hotwork USA. In August of 2005, Plaintiff sold its assets to TGC, and also agreed to let TGC use the name Hotwork USA. Accordingly, Plaintiff changed its name to Krowtoh ("Hotwork" spelled backwards). However, for purposes of this opinion, Plaintiff and Hotwork are used interchangeably.

3

the franchise "for whatever reason." (J.A 51.) In July of 2004, less than two years after entering into the Agreement, ExCelsius Ltd. terminated the Agreement, citing the allegedly unsafe condition of the equipment that Hotwork had provided.

### B.     Procedural History

In November of 2004, Plaintiff filed a complaint in the United States District Court for the Eastern District of Kentucky against ExCelsius Ltd., ExCelsius GmbH, Ahern, and Schwarzenau. The complaint claimed breach of the Agreement, misappropriation of trade secrets, unfair competition, conversion, and violation of the Lanham Act. To defend themselves against Plaintiff's suit, Defendants and Ahern retained local counsel. On January 27, 2005, Defendants and Ahern filed a motion to dismiss Plaintiff's complaint, arguing that the district court lacked personal jurisdiction because they had insufficient contacts with the forum state. The district court concluded that it had personal jurisdiction over Defendants and Ahern and denied the motion to dismiss.

On June 11, 2005, Plaintiff filed a motion for a preliminary injunction seeking to prevent Defendants and Ahern "from using the assets of Hotwork (both confidential information and physical assets) to unfairly compete against Hotwork" in violation of the post-termination restrictions set forth in the Agreement. (J.A. 306.) Plaintiff asserted that "[t]he goodwill between Hotwork and its customers already has been irreparable [sic] damaged by Defendants' actions, and further irreparable damage will result . . . ." (J.A. 307.) On June 28, 2005, the court granted Defendants and Ahern an extension of time to respond to Plaintiff's preliminary injunction motion and discovery

requests. On July 22, 2005, Defendants filed an objection to Plaintiff's motion for a preliminary injunction.[3]

The parties also began discovery related to Plaintiff's claims. Plaintiff served a request for documents and interrogatories and, on August 1, 2005, the district court entered an "agreed order extending time to respond" to Plaintiff's discovery requests, giving Defendants and Ahern until August 26, 2005 to file a response. When Defendants and Ahern failed to respond, on September 2, 2005, Plaintiff filed a motion to compel. Defendants and Ahern did not respond to the motion to compel.

Five days later, on September 7, 2005, counsel for Defendants and Ahern filed a motion to withdraw, stating that "Defendants [and Ahern] have terminated [their] representation and instructed them to withdraw as counsel . . . in this case effective immediately." (J.A. 504.) On November 14, 2005, the court granted the motion, and also ordered that, "within sixty (60) days . . . , new counsel should enter an appearance on behalf of the Defendants [and Ahern] or the Defendants [and Ahern] shall advise the Court of their intention to proceed *pro se*." (J.A. 507.) One week later, on November 21, 2005, the court granted Plaintiff's motion to compel, giving Defendants and Ahern ninety days "to file a response to [P]laintiff's motion to compel discovery." (J.A. 508.) The court also ordered the clerk's office to serve a copy on former counsel for Defendants and Ahern, with instructions to provide a copy to Defendants and Ahern.

On June 19, 2006, the district court addressed the failure of Defendants and Ahern to take action regarding the court's order of November 14, 2005:

---

[3]In February of 2006, approximately one year after Plaintiff filed its motion for a preliminary injunction, the court denied the motion, citing Plaintiff's failure to act on its motion. The court informed Plaintiff that it could refile the motion if it intended to pursue a preliminary injunction.

[T]he corporate defendants are again ordered to obtain counsel and the individual defendants are again ordered to either obtain counsel or indicate to the Court their intention to proceed pro se by filing such certification with the Court. Disregard for this Order will be considered a failure under Federal Rule of Civil Procedure 55(a) to "otherwise defense [sic] as provided by these rules" and failure to comply will result in entry of default judgment in favor of the plaintiff.

(J.A. 513.) The court ordered Defendants and Ahern to appear, either through counsel or, for the individual defendants, pro se, by August 27, 2006. The court also ordered the clerk to send a copy of the order to the individual defendants at their "last known addresses," and directed former counsel to forward a copy of the order via electronic mail to the individual defendants. Finally, the court warned that failure to comply "shall result in the Court's entry of default judgment in favor of the plaintiffs." (J.A. 513.)

Defendants and Ahern failed to act by August 27, 2006 and, on September 12, 2006, the court ordered the clerk to enter default in favor of Plaintiffs. The district court concluded that Defendants and Ahern had failed to otherwise defend under Rule 55(a). However, "[s]ince they ha[d] appeared in the action," the district court found that Defendants and Ahern were entitled to "a hearing . . . prior to entry of default judgment on the issue of liability." (J.A. 653.) Accordingly, the district court scheduled an evidentiary hearing for October 17, 2006.

On October 13, 2006, four days before the scheduled evidentiary hearing, Defendants' new counsel entered a notice of appearance, and Defendants filed a motion to set aside the entry of default.[4] Plaintiff opposed the motion, arguing that Defendants' culpable conduct caused the default

---

[4]Although Ahern joined the other defendants in arguing that the district court lacked personal jurisdiction and opposing Plaintiff's motion for a preliminary injunction, Ahern left the defendant companies in December of 2005 and subsequently began cooperating with Plaintiff. In return for Ahern's assistance in litigating its claims, Plaintiff agreed not to seek damages against Ahern. Thus, while Ahern remained a named defendant in the proceedings in the district court, he did not join in the motion to set aside the entry of default, and never again participated as a defendant.

and that it was prejudiced by Defendants' delay. After a hearing on the issue, the district court denied Defendants' motion to set aside the default, as well as Defendants' motion for reconsideration of that order.

Discovery continued, and the district court scheduled a trial on the issue of damages, which began on March 26, 2007. Following an extensive multi-day trial before the magistrate regarding the damages Plaintiff claimed it incurred as a result of Defendants' breach of the Agreement, the magistrate recommended that judgment be entered in Plaintiff's favor in the amount of $781,266. After considering the parties' objections, the district court adopted the report and recommendation of the magistrate and entered judgment in favor of Plaintiff on March 24, 2008. Defendants appealed from the judgment, as well as the district court's order denying the motion to set aside the entry of default. Plaintiff cross-appealed the district court's ruling that it was not entitled to certain damages Plaintiff claimed resulted from Defendants' breach.

## II.    MOTION TO SET ASIDE THE ENTRY OF DEFAULT

### A.    Standard of Review

This Court reviews a district court's decision to deny a motion to set aside an entry of default for an abuse of discretion. *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 352 (6th Cir. 2003). However, because of the policy favoring determinations on the merits, "a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default." *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986) ("[A] strong preference for trials on the merits in federal courts has led to the adoption of a somewhat modified standard of review where defaults are involved.").

**B.      Analysis**

Under Rule 55(c) of the Federal Rules of Civil Procedure, a "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). This Court has established three factors relevant to the determination of whether "good cause" exists to set aside an entry of default pursuant to Rule 55(c): "(1) [w]hether culpable conduct of the defendant led to the default, (2) [w]hether the defendant has a meritorious defense, and (3) [w]hether the plaintiff will be prejudiced." *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992); *accord Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002). While courts consider these same three factors in evaluating whether to set aside a default judgment under Rule 60(b), "[i]n practice a somewhat more lenient standard is applied to Rule 55(c) motions." *Shepard*, 796 F.2d at 193; *Waifersong*, 976 F.2d at 292 ("[T]he methodolgy for considering these factors and the weight to be accorded to them depends on whether the court is confronted by an entry of default or a default judgment."). Thus, although "all three factors must be considered in ruling on a motion to set aside an entry of default," when a defendant has a meritorious defense and the plaintiff would not be prejudiced, "it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *Shepard*, 796 F.2d at 194.

On appeal, the parties do not dispute the district court's conclusion that Defendants had meritorious defenses to the claims on which the court entered default.[5] Thus, the only contested

---

[5]Although the parties do not contest this issue on appeal, the presence of meritorious defenses weighs heavily in favor of setting aside the default. As the district court noted, "three of the named defendants—ExCelsius GmbH, Schwarzenau, and Ahern—likely have no liability under the Franchise Agreement, as ExCelsius [Ltd.] was the only signatory and the other three cannot be considered 'sub-franchisees.'" (J.A. 729.)

8

issues with respect to setting aside the entry of default are whether Plaintiff would be prejudiced, and whether Defendants acted culpably.

### 1.    Prejudice to Plaintiff

Defendants argue that the district court abused its discretion in finding that Plaintiff would be prejudiced by setting aside the default. Plaintiff's arguments regarding prejudice center on the "increased difficulties in discovery" that it alleges resulted because of Defendants' delay. In evaluating prejudice, this Court has emphasized that "delay alone is not a sufficient basis for establishing prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)) (internal quotation marks and citations omitted).

Agreeing with Plaintiff's representations, the district court found that Plaintiff would face increased difficulties in discovery based on the fact that "Ahern . . . indicated that a number of the documents that would show [D]efendants' inflated expenses no longer exist, so it will be more difficult for the plaintiff to account for this now that the 14 months have passed." (J.A. 730.) In addition, the district court determined that Defendants "put a complete stop to" discovery, causing evidence to become "stale with the passage of time" and increasing "the difficulty in finding witnesses . . . whose memories have unquestionably faded." (*Id.*)

We conclude that Plaintiff failed to establish that it would be prejudiced by setting aside the entry of default. Plaintiff has not shown that evidence was lost, or that it would have any increased difficulties obtaining relevant discovery. The record does not support the district court's finding that

9

evidence was lost as a result of Defendants' delay.[6]  In advancing the "lost evidence" argument, Plaintiff relied on Ahern's declaration, asserting that "it is now impossible to get accurate information about the true cost figures" that Defendants used to inflate their profits.  (J.A. 740.) Despite Plaintiff's characterization, the declaration provides no support for its argument.  Ahern's declaration stated that "[t]he decision to inflate and overstate the expenses in the reports . . . was conscious and deliberate. . . . . The overstatement of expenses was done on an ad hoc basis, and I am unable to accurately quantify the amount the expenses were overstated."  (J.A. 597-98.)  Ahern did not state that he *now* was unable to calculate the amounts that were overstated, or that he no longer has access to documents which would enable him to arrive at such amounts.  Instead, it never was possible to determine the amount of inflated expenses because the overstatement "was done on an ad hoc basis."  (J.A. 598.)  Further, Plaintiff provided no evidence that specific witnesses' memories faded beyond maintaining that "witnesses' memories are bound to fade with the passage of time." As noted above, "delay alone is not a sufficient basis for establishing prejudice."  *INVST Fin. Group, Inc.*, 815 F.2d at 398.

In finding that Plaintiff would suffer prejudice from setting aside the default, the district court also cited the loss of goodwill Plaintiff experienced during the time that Defendants failed to participate in the proceedings.  The district court found that Defendants' failure to defend

> successfully frustrated the plaintiff's attempt to stop the loss of goodwill with its European customers.  Loss of goodwill and marketplace harm caused by the defendants' continuing unfair competition using the plaintiff's equipment with the plaintiff's customers was irreparable harm that cannot be regained or even accurately

---

[6]In fact, as a result of Plaintiff's secret agreement with Ahern, Plaintiff obtained a wider scope of documents than its discovery orders sought.  Thus, while Defendants did not respond to Plaintiff's discovery requests, Plaintiff received all the documents it sought through discovery from Ahern.

> measured at this point. . . . [A]t this point, the plaintiff is relegated to attempting to recover the economic harm it suffered by recovering for the reduction in the value of its assets when they were sold in August of 2005.

(J.A. 1785.) However, Plaintiff sold its business—including the right to use the name Hotwork and all of the equipment associated with its hotwork operations—in August of 2005, before Defendants delayed the progress of the lawsuit by failing to respond to discovery and other court orders. Further, although the district court noted that Plaintiff no longer could pursue an injunction, the dismissal of Plaintiff's preliminary injunction motion resulted from its own failure to request a hearing or otherwise act on its motion, and not as a consequence of Defendants' conduct. The district court therefore abused its discretion in finding that setting aside the entry of default would prejudice Plaintiff.

## 2. Defendants' Culpable Conduct

On appeal, Defendants also argue that their conduct in failing to respond to discovery and other court orders was excusable, and not culpable. In the context of a Rule 55(c) motion, "it is not absolutely necessary that the neglect or oversight offered as reason for the delay in filing a responsive pleading be excusable." *Shepard*, 796 F.3d at 194. Instead, for a defendant's actions to constitute culpable conduct, the "defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings," rather than negligent conduct. *Id.* In addition, "[w]hen asked to set aside an entry of default, a court considers . . . [a] defendant's culpability[] in the general context of determining whether a petitioner is deserving of equitable relief." *Waifersong*, 976 F.2d at 292.

In connection with Defendants' motion to set aside the entry of default, Schwarzenau submitted an affidavit stating that he and Ahern had determined that Ahern would have primary

11

responsibility for handling the lawsuit. Schwarzenau asserted that he agreed to dismiss local counsel in Kentucky based on Ahern's assurances that, according to an international law expert that he claimed he consulted, Plaintiff would have to seek a judgment in Germany before Defendants could be held liable for money damages. Schwarzenau further stated that he did not receive any court orders or other notification that he could be subject to an entry of default until August of 2006. At that time, he immediately contacted a German attorney and retained local counsel in Kentucky, who moved to set aside the entry of default. Despite Schwarzenau's explanations, the district court concluded that Defendants' conduct demonstrated an intentional disregard for the court's proceedings, and therefore constituted culpable conduct. The district court also determined that Plaintiff's secret negotiations with Ahern to obtain relevant documents did not affect its finding that Defendants acted culpably.

The district court thus rejected Schwarzenau's assertion that he did not receive any court orders, a finding that is supported by the record. Although Defendants argue that Schwarzenau did not receive the June 2006 order warning that a failure to appear could result in the entry of default, the record makes clear that the district court ordered that a copy of the order be sent to the individual defendants' personal addresses, and also required their former counsel to send them copies of the orders via standard and electronic mail.

However, the district court did credit Schwarzenau's statements that Ahern had responsibility for handling the lawsuit and that Schwarzenau was unfamiliar with the American legal system, statements which explain Schwarzenau's failure to act even if he did receive copies of the court's orders. While the facts suggest that Schwarzenau made a conscious—although misguided—decision to ignore the district court proceedings, his explanation demonstrates that he did not intend to

disrespect the court proceedings. By acting quickly to set aside the default, Defendants "have given evidence of respect for the court's process," favoring leniency for Defendants. *Shepard*, 796 F.2d at 194 (quoting 6 Moore's Federal Practice ¶ 55.01[2] at 55-61 (1985 ed.)).

Also reducing the culpability of Defendants' actions is Plaintiff's own conduct. The district court failed to take into account Plaintiff's own inaction for much of the time that Defendants were absent from the litigation, including its failure to pursue its preliminary injunction motion, as well as Plaintiff's surreptitious conduct in negotiating an agreement with Ahern without Defendants' knowledge. *See Burrell v. Henderson*, 434 F.3d at 834 (6th Cir. 2006) (finding that the plaintiff's "fail[ure] to prosecute her claim for 16 months" and the fact that "the case was handled improperly by multiple parties" "diminishe[d] [the defendant's] culpability" and made it unfair to leave in place the default judgment). Considering Defendants' conduct "in the general context of determining whether [Defendant] is deserving of equitable relief," *Waifersong*, 976 F.2d at 292, we conclude that the district court abused its discretion in denying Defendants' motion to set aside the entry of default.

While the district court was understandably frustrated by Defendants' conduct, Defendants' meritorious defenses, the complete absence of any prejudice to Plaintiff, Plaintiff's own conduct, as well as "the strong policy in favor of deciding cases on their merits," *Shepard*, 796 F.2d at 194, all warrant setting aside the entry of default. *See id.* (noting that "when the first two factors militate in favor of setting aside the entry, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure . . . to appear"). However, as this Court previously has noted, the finding that the entry of default should be set aside "does not preclude the district court from . . . determining some appropriate . . . sanction" against Defendants for the delay caused by their conduct. *Id.* at 195.

13

Finally, because we conclude that the district court should have set aside the entry of default, it is necessary to vacate the district court's award of damages to Plaintiff. Therefore, we do not reach the parties' arguments regarding the issue of damages.

## III.  CONCLUSION

We **REVERSE** the district court's order denying Defendants' motion to set aside the entry of default, **VACATE** the district court's award of damages, and **REMAND** the case to the district court for further proceedings.